# EXHIBIT 1

| Case | Case Filing Date |
|---|---|
| Display Technologies, LLC v. BLU Products, Inc.<br>2-17-cv-00067 (EDTX) | 1/23/2017 |
| Display Technologies, LLC v. ZTE (USA) Inc.<br>2-17-cv-00068 (EDTX) | 1/23/2017 |
| Display Technologies, LLC v. LG Electronics USA, Inc.<br>2-17-cv-00069 (EDTX) | 1/23/2017 |
| Display Technologies, LLC v. HTC America, Inc.<br>2-17-cv-00070 (EDTX) | 1/23/2017 |
| Display Technologies, LLC v. Canon USA, Inc.<br>2-17-cv-00192 (EDTX) | 3/13/2017 |
| Display Technologies, LLC v. Nikon, Inc.<br>2-17-cv-00193 (EDTX) | 3/13/2017 |
| Display Technologies, LLC v. Olympus America Inc.<br>2-17-cv-00194 (EDTX) | 3/13/2017 |
| Display Technologies, LLC v. Panasonic Corporation<br>2-17-cv-00195 (EDTX) | 3/13/2017 |
| Display Technologies, LLC v. Ricoh Americas Corporation<br>2-17-cv-00196 (EDTX) | 3/13/2017 |
| Display Technologies, LLC v. HTC America, Inc.<br>2-17-cv-01057 (WDWA) | 7/10/2017 |
| Display Technologies, LLC v. Gibson Innovations USA, Inc.<br>1-17-cv-01426 (DDE) | 10/11/2017 |
| Display Technologies, LLC v. Pioneer & Onkyo U.S.A. Corporation<br>1-17-cv-01427 (DDE) | 10/11/2017 |
| Display Technologies, LLC v. Yamaha Corporation of America<br>3-17-cv-03005 (NDTX) | 10/31/2017 |
| Display Technologies LLC v. Yamaha Corporation of America<br>2-18-cv-00861 (CDCA) | 2/2/2018 |
| Display Technologies, LLC v. JVCKenwood USA Corporation<br>2-18-cv-07244 (CDCA) | 8/17/2018 |
| Display Technologies, LLC v. Como Audio, LLC<br>1-18-cv-01390 (DDE) | 9/6/2018 |
| Display Technologies, LLC v. Pyle Pro Audio Corp.<br>1-19-cv-04282 (EDNY) | 7/25/2019 |
| Display Technologies, LLC v. Inmusic, LLC<br>0-19-cv-61896 (SDFL) | 7/26/2019 |
| Display Technologies, LLC v. Klip Xtreme, LLC<br>0-19-cv-61897 (SDFL) | 7/26/2019 |
| Display Technologies, LLC v. Furrion LLC<br>3-19-cv-00699 (NDIN) | 8/29/2019 |

| Case | Case Filing Date |
|---|---|
| Display Technologies, LLC v. Alpine Electronics of America, Inc.<br>2-20-cv-10392 (EDMI) | 2/14/2020 |
| Display Technologies, LLC v. Aston Martin LLC<br>1-20-cv-00258 (DDE) | 2/23/2020 |
| Display Technologies, LLC v. FCA US LLC<br>1-20-cv-00259 (DDE) | 2/23/2020 |
| Display Technologies, LLC v. Ferrari North America, Inc.<br>1-20-cv-00260 (DDE) | 2/23/2020 |
| Display Technologies, LLC v. Jaguar Land Rover North America, LLC<br>1-20-cv-00261 (DDE) | 2/23/2020 |
| Display Technologies, LLC v. Ava Enterprises LLC<br>1-20-cv-00262 (DDE) | 2/23/2020 |
| Display Technologies, LLC v. Soundstream, Inc.<br>1-20-cv-00334 (DDE) | 3/4/2020 |
| Display Technologies, LLC v. Ava Enterprises, Inc.<br>2-20-cv-03054 (CDCA) | 4/1/2020 |
| Display Technologies, LLC v. AP Global, Inc.<br>2-20-cv-05041 (CDCA) | 6/8/2020 |
| Display Technologies, LLC v. Clarion Corporation of America<br>8-20-cv-01028 (CDCA) | 6/8/2020 |
| Display Technologies, LLC v. Mazda Motor of America, Inc.<br>8-20-cv-01029 (CDCA) | 6/8/2020 |
| Display Technologies, LLC v. Namsung America, Inc. d/b/a Dual Electronics Corporation<br>6-20-cv-01405 (MDFL) | 8/6/2020 |
| Display Technologies, LLC v. Audio Partnership LLC<br>8-20-cv-01828 (MDFL) | 8/6/2020 |
| Display Technologies, LLC v. Zenreach, Inc.<br>5-20-cv-06621 (NDCA) | 9/22/2020 |
| Display Technologies, LLC v. Cloud4Wi, Inc.<br>1-20-cv-07803 (SDNY) | 9/22/2020 |
| Display Technologies, LLC v. Leantegra, Inc.<br>1-20-cv-07816 (SDNY) | 9/22/2020 |
| Display Technologies, LLC v. Mobstac, Inc.<br>1-20-cv-07817 (SDNY) | 9/22/2020 |
| Display Technologies, LLC v. GoZone WiFi, LLC<br>8-20-cv-02679 (MDFL) | 11/13/2020 |
| Display Technologies, LLC v. Paedae, Inc.<br>2-20-cv-11287 (CDCA) | 12/14/2020 |
| Display Technologies, LLC v. Porsche Cars North America, Inc.<br>6-21-cv-00230 (WDTX) | 3/9/2021 |

| Case | Case Filing Date |
|------|------------------|
| Display Technologies, LLC v. General Motors, LLC<br>6-21-cv-00240 (WDTX) | 3/10/2021 |
| Display Technologies, LLC v. Harley-Davidson, Inc.<br>6-21-cv-00242 (WDTX) | 3/10/2021 |
| Display Technologies, LLC v. American Honda Motor Co., Inc.<br>6-21-cv-00304 (WDTX) | 3/29/2021 |
| Display Technologies, LLC v. Toyota Motor Sales, USA, Inc.<br>1-21-cv-00283 (WDTX) | 3/30/2021 |
| Display Technologies, LLC v. Toyota Motor Sales, USA, Inc.<br>6-21-cv-00313 (WDTX) | 3/30/2021 |
| Display Technologies, LLC v. Mercedes-Benz USA, LLC<br>6-21-cv-00766 (WDTX) | 7/27/2021 |
| Display Technologies, LLC v. OLYMPUS CORPORATION OF THE AMERICAS<br>5-21-cv-03502 (EDPA) | 8/5/2021 |
| Display Technologies, LLC v. Greater Goods, LLC<br>4-21-cv-00988 (EDMO) | 8/7/2021 |
| Display Technologies, LLC v. iHealth Labs, Inc.<br>3-21-cv-06454 (NDCA) | 8/20/2021 |
| Display Technologies, LLC v. Ascensia Diabetes Care US Inc.<br>2-21-cv-16342 (DNJ) | 8/31/2021 |
| Display Technologies, LLC v. Nikon Americas, Inc.<br>2-21-cv-04904 (EDNY) | 8/31/2021 |
| Display Technologies, LLC v. Omcron Healthcare, Inc.<br>1-21-cv-04783 (NDIL) | 9/9/2021 |
| Display Technologies, LLC v. ForaCare, Inc.<br>2-21-cv-07507 (CDCA) | 9/20/2021 |
| Display Technologies, LLC v. Microlife USA, Inc.<br>8-21-cv-02487 (MDFL) | 10/22/2021 |
| Display Technologies, LLC v. Microlife USA, Inc.<br>0-21-cv-62199 (SDFL) | 10/22/2021 |
| Display Technologies, LLC v. Trividia Health, Inc.<br>0-21-cv-62206 (SDFL) | 10/25/2021 |
| Display Technologies, LLC v. Volvo Car USA, LLC<br>6-21-cv-01111 (WDTX) | 10/27/2021 |
| Display Technologies, LLC v. Nonin Medical, Inc.<br>0-21-cv-02456 (DMN) | 11/5/2021 |
| Display Technologies, LLC v. Arkray USA, Inc<br>0-21-cv-02458 (DMN) | 11/5/2021 |
| Display Technologies, LLC v. BMW of North America, LLC<br>6-21-cv-01214 (WDTX) | 11/22/2021 |

| Case | Case Filing Date |
|---|---|
| Display Technologies, LLC v. i-SENS USA, Inc.<br>2-21-cv-09614 (CDCA) | 12/13/2021 |
| Display Technologies, LLC v. A&D Medical Company, Limited<br>3-21-cv-09595 (NDCA) | 12/13/2021 |
| Display Technologies, LLC v. Beurer North America, LP<br>0-21-cv-62521 (SDFL) | 12/17/2021 |
| Display Technologies, LLC v. Dariohealth Corp.<br>1-21-cv-11141 (SDNY) | 12/29/2021 |
| Display Technologies, LLC v. Hill-Rom Holdings, Inc.<br>1-22-cv-00117 (NDIL) | 1/7/2022 |
| Display Technologies, LLC v. Etekcity Corporation<br>8-22-cv-00062 (CDCA) | 1/12/2022 |
| Display Technologies, LLC v. Mocacare Corp.<br>5-22-cv-00219 (NDCA) | 1/12/2022 |
| Display Technologies, LLC v. Informed Data Systems, Inc.<br>1-22-cv-00441 (SDNY) | 1/18/2022 |
| Display Technologies, LLC v. Sony Corporation Of America<br>1-22-cv-00488 (SDNY) | 1/19/2022 |

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DISPLAY TECHNOLOGIES, LLC,                    :
                                              :
            Plaintiffs,                        :
                                              :
      v.                                       :          Civil Action No. 20-258-RGA
                                              :
ASTON MARTIN, LLC,                            :
                                              :
            Defendant.                         :

**ORDER**

Plaintiff obtained a default (D.I. 12) and thereafter moved for a default judgment in this patent case. (D.I. 17). Plaintiff's motion was accompanied by the affidavit of Leigh Rothschild, a "principle" at Plaintiff. (*Id.*).

Mr. Rothschild explained why he thought a "reasonable award of damages" would be from $75,000 to $1,000,000. Mr. Rothschild cited in support "the attached preliminary claim chart and evidence of use (Exhibit A)." (D.I. 17-1 ¶ 5). No such Exhibit A was attached. The only facts offered (without providing the underlying supporting documents) were that Defendant's 2019 revenue was the equivalent of $1,290,000,000, citing its annual report, and that patent licensing rates per "smallbusiness.chron.com" range from "3 to 6 percent of gross sales." Mr. Rothschild continued that a "conservative 3 percent royalty rate" combined with Defendant's use of the accused technology for at least five years would result in $10,000,000 in damages, more or less. (*Id.* ¶ 8). Mr. Rothschild's math is less reliable than his spelling. I would think the minimum calculation using Mr. Rothschild's inputs should be $1,290,000,000 x .03 x 5 = $193,500,000.

Mr. Rothschild acknowledges that the "accused technology" is less than the "entire product base, as well as the fact that Plaintiff has been licensing the asserted patent(s) to other parties." So he suggests a reduction from $10,000,000 to "$75,000 to $1,000,000." (*Id.* ¶ 9). I think it is safe to say that the back of the envelope analysis is completely insufficient.

Damages in a patent case are not easy to estimate or calculate. An expert gets paid hundreds of thousand of dollars to justify numbers that are usually a few orders of magnitude different from the other side's expert's calculation.

Nevertheless, to effectuate judgment I need to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). I am supposed to award "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty." 35 U.S.C. § 284.

I asked Plaintiff for any settlement agreements in other cases filed in this District. I was provided with three settlement agreements (D.I. 22), one of which was against a defendant who makes automobiles and two of which were against defendants who (I think) make stereo systems. No settlement agreements were provided for four other cases (one of which had been transferred to another district and one of which was against a defendant who came in and out of bankruptcy during the case). Besides for the bankrupt and the transferee, the fact that the two other cases—both with automobile manufacturer defendants—ended without settlement agreements suggests that those cases ended essentially in "walk-away" agreements.

The three settlement agreements that were provided averaged $19,167 as the amount of the settlement. (*Id.*). Pretty clearly, both from the course of proceedings I have seen in the cases filed by Plaintiff in this District and from the proceedings in this particular case, Plaintiff's business model does not involve actual litigation of cases, or the hiring of a damages expert. The goal is simply a "nuisance-value" settlement. On the other hand, it would seem anomalous that a

defendant who defaults should end up better off than a defendant who makes an appearance. A judgment at the bottom of Plaintiff's suggested range (*i.e.*, $75,000) is unsupported speculation. But a *settlement* in line with the three settlement agreements (*i.e.*, $20,000) seems to me to be what would likely have happened had Defendant appeared.

As much as I would like to enter a judgment for $20,000 and close this case, I cannot on the basis of this record do so. While I think I have a better basis for determining the damages are $20,000 than I would for Plaintiff's suggested range, it too is based on very little.

So, I think the motion for default judgment must be denied for lack of proof of damages. The denial is without prejudice.

I will give Plaintiff an option as to how it wants to proceed. For example, if it wants to take discovery and develop a basis for a damages amount, I will permit that. Or, if it wants me to enter a nominal judgment of $1, I will do that. Or, if it wants to dismiss the case, I will do that. Or perhaps it has some other possible plan.

The motion for default judgment (D.I. 17) is **DENIED** without prejudice.

Plaintiff is requested to submit a **STATUS REPORT** within **TEN** days explaining how it wants to proceed.

IT IS SO ORDERED this 5th day of August 2021.

United States District Judge

# EXHIBIT 3

PERKINSCOIE

500 West Second Street  
Suite 1900  
Austin, TX 78701

T  +1.737.256.6100  
F  +1.737.256.6300  
PerkinsCoie.com

February 28, 2022

M. Craig Tyler  
CTyler@perkinscoie.com  
D.  +1.737.256.6113  
F.  +1.737.256.6300

**VIA EMAIL:** _jay@kjpll.com_; _bkizzia@kjpllc.om_

Jay Johnson  
D. Bradley Kizzia  
KIZZIA JOHNSON, PLLC  
1910 Pacific Ave., Suite 13000  
Dallas, TX  75201

Re:     ***Display Technologies, LLC v. Informed Data Systems, Inc. d/b/a One Drop***, Case No.  
          **7:22-cv-00441 (SDNY) -**  
          **Notice of Exceptional Case Pursuant to Section 285**

Jay and Brad:

Pursuant to 35 U.S.C. § 285, Informed Data Systems, Inc. d/b/a One Drop ("One Drop") notifies  
Display Technologies, LLC ("Display Tech") of fundamental defects in Display Tech's  
infringement allegations against One Drop concerning U.S. Patent No. 9,300,723 (the "'723  
Patent").  *See Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 Fed. Appx. 967,  
973 (Fed. Cir. 2017) (affirming attorney fee award where a party was placed on notice of its  
frivolous litigating position by the opposing party).  One Drop has multiple defenses in this case.  
The deficiency set forth below is but one of many defenses available to One Drop. Through the  
facts and analysis set forth below, One Drop provides Display Tech with "early, focused and  
supported notice" of one example, of many other defenses, of why this case should be deemed  
exceptional if Display Tech refuses to dismiss the case.  *Stone Basket Innovations, LLC. v. Cook  
Med. LLC*, 892 F.3d 1175, 1181 (Fed Cir. 2018).  Accordingly, One Drop demands that Display  
Tech withdraw its suit within one week of receiving this letter.  Should Display Tech refuse to do  
so, One Drop intends to seek its attorney fees and costs under Section 285 and as otherwise  
allowed.

I.      **The accused One Drop health application and Glucose monitor does not include a**  
         **"digital media file."**

In its complaint, Display Technologies asserts infringement of claim 1 of the '723 Patent against  
One Drop based on "the One Drop health application, One Drop Glucose monitor, associated  
software, hardware and/or apps, and similar products ("Product").  Complaint at Paragraphs 13-  
14.  That claim recites numerous limitations that are not included in the accused Product, but one  
of those limitations is so fundamental and easily confirmed that Display Tech either knew or

Jay Johnson
D. Bradley Kizzia
February 28, 2022
Page 2

should have known about those differences had it conducted even a minimal pre-suit investigation.

Claim 1 of the '723 patent recites, for example:

1. A media system, comprising:
at least one media terminal disposed in an accessible relation to at least one interactive computer
      network,
a wireless range structured to permit authorized access to said at least one interactive computer
      network,
at least one media node disposable within said wireless range, wherein said at least one media
      node is detectable by said at least one media terminal,
**at least one <u>digital media file</u>** initially disposed on at least one of said at least one media
      terminal or said at least one media node, said at least one media terminal being structured
      to detect said at least one media node disposed within said wireless range,
a communication link structured to dispose said at least one media terminal and said at least one
      media node in a communicative relation with one another via said at least one interactive
      computer network,
said communication link being initiated by said at least one media terminal,
said at least one media node and said at least one media terminal being structured to **transmit
      said at least one digital media file** therebetween via said communication link, and
said communication link is structured to bypass at least one media terminal security measure for
      a limited permissible use of the communication link by the media node to only
      transferring the at least one digital media file to, and **displaying the at least one digital
      media file** on, the at least one media terminal.

('723 patent at 7:41--8:3) (emphasis added).) One Drop's accused Product does not comprise, transmit or display the claimed "Digital media file." The '723 patent specifically states that "[i]n particular, the digital media file(s) may include virtually any electronic file or data such as a digital photograph, video, audio, animation, text, or any other electronic document or object." *Id.* at 3:47-50. In addition, to gain allowance of the '723 patent, the applicant added claim limitations with the digital media file and then argued that these limitations distinguished over cited prior art disclosing transfer of HTTP data or email data. (see Response filed November 13, 2015.)[1] The online Free Dictionary defines "file" as it relates to computers as "[a] collection of data or program records stored as a unit with a single name." https://www.thefreedictionary.com/digital+file.

---

[1] Display Tech is estopped from using the doctrine of equivalents in an attempt to broaden these limitations.

Jay Johnson
D. Bradley Kizzia
February 28, 2022
Page 3

Quite differently, the One Drop accused Product records, transmits and displays only a measurement value.  It is not stored, nor does it reside on a file system.  And this measurement value has no name.  This is a fundamental defect in Display Tech's assertion of the '723 patent against One Drop.  And this is true without even considering the additional requirement that the claimed digital file is a digital media file, requiring some type of "media," such as visual or audio content.  A measurement value cannot be defined as "media" of any kind, which must require audio or visual content. Had Display Tech conducted even a minimal pre-suit investigation, it would have easily observed that the accused Product does not utilize digital media files in any way.

In sum, Display Tech has no Rule 11 basis for asserting the '723 patent.  Display Tech either knew that the accused One Drop product does not infringe because it does not use digital media files, or Display Tech failed to conduct an adequate pre-suit investigation.  Either way, One Drop demands that Display Tech immediately withdraw its allegations regarding the '723 patent.

## II.     Conclusion

The foregoing analysis sets forth one fundamental reason why Display Tech's lawsuit against One Drop is futile and should never have been filed.  To be sure, One Drop has many other defenses in this case, but Display Tech and its counsel should have recognized this glaring hole in its case (as discussed above) had they conducted an adequate pre-suit investigation.  Moreover, even if Display Tech and its counsel had been completely unaware of the foregoing prior to filing this suit, they are now on notice, and a party "must continually assess the soundness of pending infringement claims." *Taurus IP, LLC v. DaimlerChrysler Corp.,* 726 F.3d 1306, 1328 (Fed. Cir. 2013).  As demonstrated above, Display Tech lacks any reasonable basis for asserting that One Drop infringes any valid and enforceable claim, so One Drop demands that Display Tech dismiss its complaint within one week of the date of this letter.  If Display Tech persists, One Drop will, at the appropriate time, seek its attorneys' fees and costs.

Very truly yours,

M. Craig Tyler

# EXHIBIT 4



# Glucose Meter Kit.

Clinically effective and FDA approved, the One Drop Bluetooth-enabled glucose meter sets the standard for simple, effective diabetes self-care. Get a reading in just five seconds.

Accent Color: Orange ⌄

QTY

[ − ] 1 [ + ]

$49.99 USD

[ Add to Cart ]

Free shipping

## What's Included

**One Drop Starter Kit**
**One Drop Starter Kit**



Bluetooth Glucose Meter



Lancing Device

One Drop | Smart Blood Glucose Meter





Test Strips (25 ct)



Lancets (10 ct)



Carry Case






Bluetooth Glucose Meter

# Details

Glucose Meter
2.75 in x 1.25 in x 0.5 in

Bluetooth-enabled

Clinically tested and FDA approved

Vacuum Metalized Polycarbonate ABS
Lancing Device
3.75 in x 0.75 in

Compatible with 33G Sterile Single-use Lancets

Vacuum Metalized Polycarbonate ABS
Carry Case
3.25 in x 2.25 in x 1.25 in

Vegan Leather
Power Source
Two CR2032 Batteries (included)
Need test strips?
Subscribe today to get test strips for **less than $25/month**! Delivered direct to your door. No prescriptions or co-pays required!

Shop Now >







## Bluetooth enabled
### Get wireless readings
The One Drop glucose meter is Bluetooth enabled. Send your readings to the One Drop app automatically.

Review your data anytime. Instantly share glucose reports with your healthcare team!





## Powerful insights
### Make empowered decisions

One Drop delivers personalized insights and advice based on your health profile and glucose data. Learn how your diet, exercise, and other behaviors affect your glucose, all in the One Drop app.

Read more >



## Accurate and reliable
### Trust your numbers

The One Drop glucose meter is FDA-approved and recognized as one of the most accurate meters on the market. Accuracy has been confirmed in both clinical and laboratory settings.

Learn more about accuracy >

 

Ten times better than...

# Whatever you're doing right now.

One Drop brings ease, convenience, and affordability to diabetes care. Sign up today to lower your numbers and manage your diabetes **stress-free**!

Shop Products

# Read More on Our Blog



## Blood Glucose Meter Accuracy

Every blood glucose meter claims that it's accurate. But what does accurate really mean in terms of blood glucose (BG)? Pop Quiz A. Does accurate...

Read more >



## One Drop Guide to Checking Blood Sugar

Everyone with diabetes needs to check their blood sugar. It can be a pain, but the truth is – it's one of the best things...

Read more >

 

# EXHIBIT 5

# How to set up and sync your One Drop glucose meter (iOS and Android)

onedrop.today/blogs/support/meter-setup

Watch our setup video for step-by-step instructions.

If you're setting up your One Drop meter for the first time, make sure that your phone software and One Drop app are up to date.

If you don't have the One Drop app, download it for free on your iOS or Android device.

In order for readings to upload automatically from your device to the One Drop app, your device must be within a few feet of your phone. You will also need to confirm that One Drop has permission to connect via Bluetooth. Your phone must be running the latest version of iOS or Android for Bluetooth permissions to work.

*Note for iPhone users:*

*After downloading the One Drop app, a pop-up will appear asking you for permission to sync with Bluetooth accessories. Say OK and follow the on-screen instructions.*

If you accidentally dismissed the pop-up, no worries! Simply follow these instructions to grant permission:

1. On your iPhone, go to Settings.
2. Scroll down to where all your apps are listed and select One Drop.
3. Toggle Bluetooth ON.

**To set up your meter for both iOS and Android, follow these steps:**

1. Make sure your phone's Bluetooth is turned on and your meter is within a few feet of your phone.
2. Open the One Drop app.
3. Choose the profile icon in the upper right to visit My Account.
4. Choose Set Up a Connected Device, then Glucose Meter.
5. Select the One Drop meter from the list of glucose meters.
6. Press and hold the power button on your glucose meter until a Bluetooth symbol flashes on the meter screen.
7. Look for a checkmark on your meter.

You're connected!

**Using your One Drop glucose meter**

Check your blood sugar using your One Drop meter and watch the results automatically transfer to the One Drop app.

Your device should remember your meter. You do not need to pair your meter to your device each time you check your blood sugar. Note that when your glucose meter is not actively taking a reading, the meter will appear as "not connected" in your list of Bluetooth devices.

To confirm your device and meter are still paired, check your phone's Bluetooth settings. You should see ONEDROP in your devices list. It does not need to be connected to sync readings to your app.

If you checked your blood sugar prior to setup, those meter readings will not transfer to the One Drop app. Non-transferable readings will display a line next to the glucose value, rather than a time and date. You can manually add blood sugar readings you took prior to setup by selecting the icon in the lower left, then selecting Glucose.



If you experience any difficulties, please reach out to us by calling 1-800-437-1474 (US/CA) (+44 808-164-8300 for UK/EU customers) or emailing us at support@onedrop.today. Support hours are 9:30 a.m. - 5:30 p.m. ET Monday through Friday.

Updated: November 17, 2021

# EXHIBIT 6

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 3 | (("20050226254") or ("20040133631") or ("20100063670")).PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2015/08/09 18:14 |
| L2 | 31374 | 709/227 | US-PGPUB; USPAT | OR | OFF | 2015/08/09 20:26 |
| L3 | 661 | H04L63/00.CPC. | US-PGPUB; USPAT | OR | OFF | 2015/08/09 20:27 |
| L4 | 45 | ((Amit) near2 (Garg)).INV. | US-PGPUB; USPAT; USOCR | OR | OFF | 2015/08/09 20:29 |
| L5 | 53 | ((Tom) near2 (Brown)).INV. | US-PGPUB; USPAT; USOCR | OR | OFF | 2015/08/09 20:29 |
| S2 | 1 | "8671195" | US-PGPUB; USPAT | OR | OFF | 2015/08/06 14:00 |
| S39 | 21 | ((tcp ip protocol$5) with (avoid$5 detour$5 bypass$6) with (password$5 key? firewall$5)) and ((transfer$5 transmit$6 send$5) with (video audio multimedia media) with (mobile portable handheld$5 cellular$5 cellphone$5)) | US-PGPUB; USPAT | OR | OFF | 2015/08/06 22:15 |
| S40 | 10 | S39 and @ad< "20071207" | US-PGPUB; USPAT | OR | OFF | 2015/08/06 22:15 |
| S41 | 2 | "20100063670" | US-PGPUB; USPAT | OR | OFF | 2015/08/06 22:33 |
| S43 | 285 | ((tcp ip protocol$5) with bypass$6 with (password$5 key? firewall$5)) | US-PGPUB; USPAT | OR | OFF | 2015/08/06 22:35 |
| S45 | 2 | (("6240533") or ("20050240906")).PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2015/08/06 22:40 |
| S49 | 12 | ( "20060161394" "20060059265" "20080271135" "20070094725" "20060170957" "20020051463" "20050226254" "20050097197" ) and (bypass$5 avoid$5 … | US-PGPUB; USPAT | OR | OFF | 2015/08/06 22:51 |
| S54 | 2 | ( "20060161394" "20060059265" "20080271135" "20070094725" "20060170957" "20020051463" | US-PGPUB; USPAT | OR | OFF | 2015/08/06 22:59 |

| | | "20050226254" "20050097197" ) and (bypass$5 avoid$5 ) and failsafe$5 | | | | |
|---|---|---|---|---|---|---|
| S60 | 321 | ((tcp protocol$5) with (avoid$5 detour$5 bypass$6) with (password$5 key? firewall$5)) and (mobile portable handheld$5 cellular$5 cellphone$5) | US-PGPUB; USPAT | OR | OFF | 2015/08/07 18:33 |
| S61 | 151 | S60 and @ad<"20071207" | US-PGPUB; USPAT | OR | OFF | 2015/08/07 18:33 |
| S62 | 481 | ((tcp protocol$5) with (avoid$5 detour$5 bypass$6) with (password$5 key? firewall$5)) | US-PGPUB; USPAT | OR | OFF | 2015/08/07 18:33 |
| S63 | 248 | S62 and @ad<"20071207" | US-PGPUB; USPAT | OR | OFF | 2015/08/07 18:34 |
| S65 | 321 | ((tcp protocol$5) with (avoid$5 detour$5 bypass$6) with (password$5 key? firewall$5)) and (mobile portable handheld$5 cellular$5 cellphone$5) | US-PGPUB; USPAT | OR | OFF | 2015/08/08 14:52 |
| S66 | 151 | S65 and @ad<"20071207" | US-PGPUB; USPAT | OR | OFF | 2015/08/08 14:52 |
| S68 | 151 | (avoid$5 detour$5 bypass$6) and S66 | US-PGPUB; USPAT | OR | OFF | 2015/08/08 14:53 |
| S69 | 481 | ((tcp protocol$5) with (avoid$5 detour$5 bypass$6) with (password$5 key? firewall$5)) | US-PGPUB; USPAT | OR | OFF | 2015/08/08 14:53 |
| S70 | 248 | (avoid$5 detour$5 bypass$6) and S69 and @ad<"20071207" | US-PGPUB; USPAT | OR | OFF | 2015/08/08 14:53 |
| S77 | 1 | "20100031339" | US-PGPUB; USPAT | OR | OFF | 2015/08/08 14:59 |
| S80 | 5406 | ((avoid$5 bypass$6) near5 (password$5 firewall$5 secur$6)) and ((media multimedia audio video) near18 (distribut$6 transmit$6 transfer$6 send$6)) | US-PGPUB; USPAT | OR | OFF | 2015/08/08 15:02 |
| S81 | 1151 | S80 and @ad<"20071207" and bypass$6 | US-PGPUB; USPAT | OR | OFF | 2015/08/08 15:02 |
| S82 | 153 | ((avoid$5 bypass$6) near5 (password$5 firewall$5)) and ((media multimedia audio video) near18 (distribut$6 transmit$6 transfer$6 send$6) with (mobile portable handheld$5 cellular$5 cellphone$6 )) | US-PGPUB; USPAT | OR | OFF | 2015/08/08 15:03 |
| S83 | 21 | S82 and @ad<"20071207" and bypass$6 | US-PGPUB; USPAT | OR | OFF | 2015/08/08 15:03 |
| S86 | 5060 | ((avoid$5 bypass$6) near5 (password$5 firewall$5 secur$6)) and bypass$5 and @ad<"20071207" | US-PGPUB; USPAT | OR | OFF | 2015/08/08 15:12 |
| S87 | 1019 | S86 and ("701"/$ "709"/$ "370"/$ "455"/$).ccls. | US-PGPUB; USPAT | OR | OFF | 2015/08/08 15:12 |
| S89 | 258 | S86 and ("701"/$ "709"/$ "370"/$ "455"/$).ccls. and ( peer$5 "p2p") | US-PGPUB; USPAT | OR | OFF | 2015/08/08 15:15 |

| S90 | 3932 | ((avoid$5 bypass$6) near5 (password$5 firewall$5)) | US-PGPUB; USPAT | OR | OFF | 2015/08/08 18:00 |
| S91 | 675 | S90 and ("701"/$ "709"/$ "370"/$ "455"/$).ccls. and @ad<"20071207" | US-PGPUB; USPAT | OR | OFF | 2015/08/08 18:00 |
| S92 | 336 | S90 and ("701"/$ "709"/$ "370"/$ "455"/$).ccls. and @ad<"20071207" and bypass$6 | US-PGPUB; USPAT | OR | OFF | 2015/08/08 18:01 |
| S102 | 2 | "20100063670" | US-PGPUB; USPAT | OR | OFF | 2015/08/08 23:56 |

**8/9/2015 8:30:04 PM**
**C:\Users\jchang2\Documents\EAST\Workspaces\13494097-1.wsp**